**NEW SOUTH FEDERAL SAVINGS BANK,**

                **Plaintiff,**

-vs-                                                      Case No. 6:08-cv-1791-Orl-22KRS

**NGOZIKA NWANERI, JR.; ANCHOR TITLE & ASSOCIATES, INC.; STEWART TITLE GUARANTY COMPANY; ROBERT OUSNAMER; PETER J. ESPOSITO and ONLINE APPRAISALS, INC.,**

                **Defendants.**
_____

## ORDER

### I. INTRODUCTION

This cause comes before the Court for consideration of the following motions:

(1) Defendants Robert Ousnamer's ("Ousnamer") and Peter J. Esposito's ("Esposito") Motion to Dismiss Plaintiff New South Federal Savings Bank's ("New South") First Amended Complaint (Doc. No. 10), filed on July 28, 2008;

(2) Defendant Anchor Title & Associates, Inc.'s ("Anchor Title") Motion to Dismiss New South's First Amended Complaint (Doc. No. 19), filed on August 26, 2008; and

(3) Defendant Online Appraisals, Inc.'s ("Online Appraisals") Motion to Dismiss New South's First Amended Complaint (Doc. No. 42), filed on December 12, 2008.

New South has filed its opposition to each defendant's motion to dismiss. (Doc. Nos. 18, 24, and 44.) Upon carefully considering the parties' submissions, the Court denies

Ousnamer's and Esposito's Motion and Anchor Title's Motion and grants Online Appraisals' Motion.

## II. BACKGROUND AND PROCEDURAL HISTORY

This dispute arises out of a real estate transaction funded by New South in which Defendant Ngozika Nwaneri, Jr. ("Nwaneri") purchased residential property from an individual named Tommy Blue. In general, New South alleges that after Nwaneri defaulted on a loan issued by New South, it discovered multiple errors, omissions, and misrepresentations on loan documents it relied on to issue the loan, which caused it damages of at least $400,000. For purposes of ruling on the defendants' motions to dismiss, the Court accepts New South's allegations as true. *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (stating that when a court considers a motion to dismiss, "[t]he allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs").

New South alleges that Nwaneri submitted an application ("the Loan Application") to New South to secure financing for the purchase of a residence known as 1714 Seneca Boulevard, Winter Springs, Florida ("the Property"). The Loan Application reported that Nwaneri intended to use the Property as a secondary residence, he earned $36,250 per month, and his various checking, savings, and investment accounts had balances totaling over $700,000. In the course of processing the Loan Application, New South contacted Online Appraisals to prepare an appraisal of the Property. Online Appraisals, in turn, retained Esposito and Ousnamer to prepare the appraisal, without consulting New South. The appraisal included certifications by both Esposito and Ousnamer regarding the methods used to develop the appraisal and stated that the Property had a market value of $1,525,000.

New South also contacted Stewart Title Guaranty Company ("Stewart Title") to obtain title insurance. Stewart Title, in turn, authorized Anchor Title to act as closing agent. Stewart Title issued New South an Insured Closing Service letter (commonly referred to as a closing protection letter, or "CPL") agreeing to reimburse New South for actual loss arising from Anchor Title's fraud or dishonesty in handling New South's funds and documents.[1] At the closing, Anchor Title prepared and issued the Commitment for Title Insurance and a title insurance policy. Anchor Title also executed a HUD-1 Settlement Statement listing the funds received and disbursed at the closing. Line 303 of the HUD-1 indicated that Anchor Title received $102,954.26 from Nwaneri in connection with the closing. Anchor Title and Nwaneri certified that the HUD-1 accurately stated the funds received or disbursed in the transaction.[2] Finally, New South relied on the certifications made in the Loan Application, the Appraisal, and the HUD-1 when it released funds to Anchor Title for disbursement at the closing.

---

[1] The relevant portion of the CPL provides:

[T]he Stewart Title Guarantee Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by said Issuing Agent or Approved Attorney when such loss arises out of:
    1. Failure of said Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to . . . the collection and payment of funds due you, or
    2. Fraud or dishonesty of said Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closing.

(Doc. No. 9 Ex. D.)

[2] The certification executed by Anchor Title stated: "To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction."

After Nwaneri defaulted on the loan, New South discovered substantial errors, omissions, and misrepresentations in the Loan Application, Appraisal, and HUD-1. Specifically, the Loan Application inaccurately reported that Nwaneri intended to use the Property as a second residence, rather than for investment purposes, it overstated Nwaneri's monthly income, which was much less than $36,250 per month, and it incorrectly stated either the existence of or balances on Nwaneri's checking, savings, and investment accounts. The Appraisal inaccurately valued the Property because it was based on properties that were substantially superior to the Property, it overlooked recent sales in the immediate neighborhood that were more similar to the Property, and it falsely stated that it had been prepared in conformity with the Uniform Standards of Professional Appraisal Practice. The HUD-1 falsely certified that it was an accurate account of the funds received and disbursed at closing. As a result of these errors, omissions, and misrepresentations, New South incurred damages of at least $400,000.

On July 18, 2008, New South filed its First Amended Complaint against Nwaneri, Anchor Title, Stewart Title, Ousnamer, Esposito, and Online Appraisals. (Doc. No. 9.) Counts I, II, and III assert claims against Nwaneri for negligence, negligent misrepresentation, and fraud. (*Id.* at ¶¶ 31-47.) Counts IV, V, and VI assert claims against Anchor Title for negligence, fraud, and breach of fiduciary duty. (*Id.* at ¶¶ 48-60.) Count VII asserts a claim against Stewart Title for breach of contract. (*Id.* at ¶¶ 61-65.) Counts VIII and IX assert claims against Ousnamer and Esposito for negligence and negligent misrepresentation. (*Id.* at ¶¶ 66-76.) Finally, Count X asserts a claim against Online Appraisals for "negligent selection/instruction/supervision." (*Id.* at ¶¶ 77-80.) On August 1, 2008, Stewart Title filed its

answer and raised affirmative defenses. (Doc. No. 11.) Anchor Title, Ousnamer, Esposito, and Online Appraisals have filed motions to dismiss all of the claims against them. Nwaneri has not responded to the Complaint.

## III. THE PARTIES' POSITIONS

Anchor Title argues that the Court should dismiss Counts IV, V, and VI because these claims are barred by Florida's economic loss rule, which bars a plaintiff from bringing tort claims to recover pure economic damages arising from a breach of contract. (Doc. No. 19 p. 2.) Anchor Title asserts that it is in contractual privity with New South through Stewart Title's CPL, its commitment to issue title insurance, and the terms of the HUD-1. (*Id.* at 6.) Anchor Title further asserts that New South's allegations relate to Anchor Title's performance of its contractual obligations. (*Id.*) Thus, Anchor Title argues that New South's tort claims of negligence, fraud, and breach of fiduciary duty are barred by the economic loss rule. (*Id.*) Anchor Title also argues that the Court should dismiss Count V because it fails to plead fraud with the specificity required by Fed. R. Civ. P. (9)(b). (*Id.* at 7.) Finally, Anchor Title argues that the Court should dismiss Count VI because it does not assert facts sufficient to establish a claim for breach of fiduciary duty. (*Id.* at 9.)

Ousnamer, Esposito, and Online Appraisals ("the Appraiser Defendants") argue that the Court should dismiss Counts VIII, IX, and X because these claims are barred by Florida's economic loss rule. (Doc. No. 10 p. 2.) The Appraiser Defendants assert that Ousnamer and Esposito are employees of Online Appraisals, not independent contractors as alleged by New South. (*Id.*) In addition, the Appraiser Defendants assert that the Appraisal and an invoice issued to New South by Online Appraisals constituted a contract for services between New

South and the Appraiser Defendants. (*Id.*) The Appraiser Defendants further assert that New South's allegations of negligence (Count VIII) and negligent misrepresentation (Count IX) relate to statements made in the Appraisal, which were necessarily made in the performance of the contract. (*Id.* at 2-3.) Finally, the Appraiser Defendants assert that New South cannot assert a negligent selection claim (Count X) against Online Appraisals because it cannot assert cognizable tort claims against Ousnamer and Esposito. (*Id.* at Doc. No. 42 pp. 3, 9.) Thus, the Appraiser Defendants argue that because New South's losses were purely economic and related to the performance of a contract, New South's tort claims are barred by Florida's economic loss rule.

New South argues that its tort claims are not barred by Florida's economic loss rule. Regarding Anchor Title, New South asserts that its "claims against Anchor Title are independent of any contractual relationship that exist[ed] between New South and Stewart Title under the [CPL]." (Doc. No. 24 p. 5.) The gravamen of New South's argument is that Anchor Title was Stewart Title's agent for purposes of issuing the title insurance policy, but that Anchor Title was not Stewart Title's agent for purposes of closing the transaction. (*Id.* at 6-7.) New South therefore asserts that Anchor Title was not in contractual privity with New South regarding its conduct as closing agent, which is the conduct at the heart of New South's claims. (*Id.*) New South also asserts that Count V alleges facts sufficient to satisfy Rule 9(b) and that Count VI alleges facts sufficient to establish a claim for breach of fiduciary duty. (*Id.* at 7-8, 10-12.)

Regarding the Appraiser Defendants, New South asserts that their motions do not comply with Fed. R. Civ. P. 7 or Middle District of Florida Local Rules 1.05 and 3.01. (Doc.

No. 18 p. 1; Doc. No. 44 p. 1.) New South argues that the Appraiser Defendants' motions to dismiss lack "the specificity and particularity that is required by these sections." (Doc. No. 44 p. 1.) New South also asserts that the Appraisal and invoice do not constitute a contract between New South and Online Appraisals, its claims against the Appraiser Defendants are separate from any alleged contract, and that the Appraiser Defendants' motions improperly assert matters extrinsic to the pleadings. (*Id.* at 2.) Accordingly, New South asserts that the Court should not dismiss any of the counts alleged in its Amended Complaint.

### IV. ANALYSIS

As a preliminary matter, the Court is compelled to note that New South's legal memoranda opposing the various motions to dismiss rely heavily on the decision of *Conley v. Gibson,* 355 U.S. 41 (1957), and the standard articulated therein for deciding whether a complaint states a claim for relief. However, *Conley* is no longer good law. Two years ago, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court announced the "retirement" of *Conley*'s "no set of facts" language, and substituted instead a requirement that a complaint include "enough facts to state a claim to relief that is plausible on its face," rather than merely "conceivable." 550 U.S. 544, 563-570. The Court is also compelled to note that New South's legal memoranda rely almost exclusively on non-Eleventh Circuit precedent, especially decisions from the Ninth Circuit, without directing this Court to any authority making these decisions binding on district courts in the Eleventh Circuit.

**A. Legal Principles of the Economic Loss Rule**

Florida's economic loss rule generally prohibits parties in contractual privity from recovering in tort for purely economic damages. *Indemnity Ins. Co. of N. Amer. v. Amer.*

*Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). The rule provides that "a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id.* at 537. The purpose of the rule is "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* at 536. When parties are in contractual privity, "contract principles are generally more appropriate [than tort principles] for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreements." *Id.* at 536-37. The rule does not bar recovery when the tort is "committed independently of the contract breach, such as fraud in the inducement," or when the tort alleges negligence in the provision of professional services.[3] *Id.* at 537.

**B. Anchor Title's Motion to Dismiss Counts IV, V, and VI**

Taking as true the facts alleged in the Complaint, the Court cannot find contractual privity between Anchor Title and New South. The facts alleged in the Complaint indicate that Stewart Title hired Anchor Title as its agent to prepare and issue a commitment for title insurance and a title insurance policy. Anchor Title also acted as the closing agent, assuming obligations independent of its relationship with Stewart Title to serve as the escrow agent and closing officer of the transaction. Thus, according to the facts alleged in the Complaint, Anchor Title was not an agent of Stewart Title for purposes other than for issuing the title insurance

---

[3] Florida courts remove professional malpractice from the rule's reach for public policy reasons. *See Indemnity Ins. Co.*, 891 So. 2d at 537. Florida courts define "professional services" as those provided by "a person engaged in a vocation requiring at a minimum a four-year college degree before licensing is possible in Florida." *Vesta Const. and Design, L.L.C. v. Lotspeich & Assocs., Inc.*, 974 So. 2d 1176, 1181 (Fla. 5th DCA 2008) (citing *Moransais v. Heathman*, 744 So. 2d 973, 977 (Fla. 1999)).

policy, and its conduct as a closing agent exceeded the scope of its agency relationship with Stewart Title. In addition, Stewart Title's CPL does not create a contractual relationship between Anchor Title and New South. Title insurers generally issue CPLs to induce lenders to purchase title insurance, not to create contractual privity between lenders and closing agents. In this case, nothing in Stewart Title's CPL creates or implies any contractual obligation that can be enforced by or against Anchor Title; it merely indemnifies New South for Anchor Title's conduct as a closing agent. Accordingly, Anchor Title is not in contractual privity with New South by virtue of its agency relationship with Stewart Title or Stewart Title's contractual relationship with New South.

A lender and closing agent can form a contractual relationship based on the closing instructions sent by the lender to the closing agent. *See Lehman Bros. Holdings, Inc. v. Hirota*, No. 8:06-cv-2030-T-24MSS, 2007 WL 1471690, at *1 (M.D. Fla. May 21, 2007) (permitting plaintiff to proceed on breach of contract claims premised on theory that closing agent defendants owed contractual duties to lender pursuant to closing instructions). In some circumstances, the closing instructions may be sufficient to create an agency relationship between the closing agent and the lender. *See O'Brien v. J.I. Kislak Mortg. Corp.*, 934 F. Supp. 1348, 1358 (S.D. Fla. 1996) (suggesting that a lender's closing instructions could create an agency relationship between a closing agent and the lender, but not finding such a relationship); *Am. Title Ins. Co. v. East West Fin.*, 16 F.3d 449, 456 (1st Cir. 1994) (finding that closing agent was not an agent of lender because no evidence suggested that lender issued closing instructions to closing agent). In fact, such a relationship is implied by New South when it asserts that Anchor Title assumed the role of "the escrow and closing officer in closing

the real estate transaction and loan *on behalf of the lender*." (Doc. No. 9 ¶ 19 (emphasis added).)

However, the facts alleged by New South do not establish a contractual or agency relationship between Anchor Title and New South. New South has merely alleged that it delivered to Anchor Title "the final documents and materials to be executed at the closing of the loan and transaction, including a HUD-1 listing all funds to be received and disbursed in connection with the closing." (*Id.* at ¶ 24.) The HUD-1, Loan Application, Appraisal, and CPL are attached to the Complaint, but no other documents are included by either New South or Anchor Title.[4] New South's allegations do not indicate whether it sent closing instructions to Anchor Title, nor do they reveal what were the contents of any closing instructions sent. Thus, the Court cannot determine whether the documents sent by New South established a contractual

---

[4] Neither the HUD-1, the Appraisal, or the CPL establishes a contractual relationship between Anchor Title and New South. To the extent Anchor Title argues that other documents referenced in the Complaint establish a contractual relationship, then the Court could have considered those documents without converting Anchor Title's Motion to Dismiss into a Motion for Summary Judgment if Anchor Title had attached them to its Motion. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (indicating that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment"). However, the Court is limited to considering the documents attached by New South to its Complaint because Anchor Title did not attach any additional documents to its Motion.

relationship with Anchor Title.[5] Accordingly, based on the facts alleged in the Complaint, the economic loss rule does not bar any of New South's tort claims against Anchor Title.

Anchor Title argues in the alternative that the Court should dismiss Count V (fraud) because it does not satisfy the special pleading requirements of Fed. R. Civ. P. 9(b). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The application of Rule 9(b), however, must not abrogate the concept of notice pleading." *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted).

Anchor Title, citing *Brooks*, 116 F.3d at 1369, argues that the "Eleventh Circuit has set . . . four (4) *required* elements of a fraud claim." (Doc. No. 19 p.7 (emphasis added).) Anchor Title misconstrues *Brooks*. In *Brooks*, the Eleventh Circuit stated:

> Rule 9(b) *may* be satisfied if the complaint sets forth:
> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
> (3) the content of such statements and the manner in which they misled the plaintiff, and
> (4) what the defendants obtained as a consequence of the fraud.

---

[5] Anchor Title relies heavily on the reasoning of *Hirota* to support its claim that New South's tort claims are barred by the economic loss rule. However, the facts of this case are distinguishable from *Hirota*. In *Hirota*, the lender plaintiff asserted both tort and contract claims against multiple defendants, including title agents. 2007 WL 1471690 at *1. The court dismissed the tort claims based on the economic loss rule because the lender's allegations indicated that it had contractual relationships with the title agents. *Id.* at *5. Unlike the lender in *Hirota*, New South does not allege facts indicating that it had a contractual relationship with Anchor Title.

-11-

116 F.3d at 1369 (emphasis added). The Court continued by stating, "However, alternative means are also available to satisfy the rule." *Id.* (internal citations omitted). Thus, the four elements described by *Brooks* are not required to establish a fraud claim, but are merely sufficient to establish a fraud claim.

In this case, the Court finds that New South stated with particularity the circumstances constituting fraud. New South alleged that Anchor Title made false statements related to the funds received and disbursed at the closing of the transaction, that Anchor Title knew the statements were false, and that Anchor Title knew that New South would rely on those statements in funding the transaction. New South further alleged that it actually relied on Anchor Title's false statements when it funded the transaction. Although New South does not allege what Anchor Title obtained as a consequence of the fraud, the Court is satisfied that New South's allegations give Anchor Title sufficient notice as to the basis for the fraud claim. Its allegations describe when and where the misrepresentation occurred (at the closing of the transaction), by whom (Anchor Title's representative), and to what it related (the funds disbursed or received by Anchor Title).

Anchor Title also argues that the Court should dismiss Count VI, breach of fiduciary duty, because New South has failed to state a claim upon which relief may be granted. Anchor Title asserts that New South must allege facts sufficient to establish that New South placed its trust in Anchor Title and that Anchor Title acknowledged that trust. (Doc. No. 19 p. 10.) Anchor Title argues that New South has not plead facts sufficient to establish that Anchor Title had superior knowledge of the transaction or that it was in a position to influence New South; therefore, New South has failed to allege facts to support a fiduciary relationship. (*Id.*)

The Court finds that New South has stated a cause of action for which relief may be granted. To state a claim for breach of fiduciary duty, New South must establish: (1) the existence of a fiduciary duty; (2) Anchor Title's breach of that duty; and (3) damages proximately caused by Anchor Title's breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). A fiduciary duty arises from "a relation of trust and confidence . . . where confidence is reposed by one party and a trust accepted by the other." *Quinn v. Phipps*, 113 So. 419, 421 (1927). New South alleges that it reposed confidence in Anchor Title to act "in an honest and transparent manner" in its dealings with New South related to closing the transaction. (Doc. No. 9 ¶ 58.) New South also alleges that Anchor Title accepted this trust when it acted as closing agent and certified that the HUD-1 accurately reflected the funds received and disbursed by Anchor Title at the closing because it knew that New South would rely on its certification to fund the transaction. Thus, New South alleges sufficient facts to support its claim that Anchor Title owed it a fiduciary duty. New South also alleges that Anchor Title breached this duty by signing the HUD-1 even though it did not accurately reflect the funds received and disbursed in the transaction and that New South suffered damages as a result of Anchor Title's breach. Thus, New South has stated a claim for breach of fiduciary duty.

**C. The Appraiser Defendants' Motions to Dismiss Counts VIII, IX, and X**

As an initial matter, the Appraiser Defendants' motions comply with Fed. R. Civ. P. 7(b)(1)(B) and Local Rules 1.05 and 3.01. Rule 7(b)(1)(B) provides that a motion requesting a court order must "state with particularity the grounds for seeking the order." The pertinent parts of the Local Rules indicate that a movant must include a statement regarding the basis for its request. New South argues that the Appraiser Defendants have not complied with these

requirements because they seek relief under "12(b)" without "specifically stat[ing] under what sub-section of Rule '12(b)' they are proceeding upon." (Doc. No. 18 p. 6.) As a general matter, the Court agrees that "a litigant must cite each separate Rule 12(b) defense in the pre-answer motion" and that "[c]iting one Rule 12(b) defense in the hope that it will sufficiently raise another defense is not permissible." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, No. 05-14380, 2008 U.S. App. LEXIS 26515, *25 (11th Cir. Dec. 29, 2008). In this case, however, the Appraiser Defendants have stated with particularity that their motions to dismiss Counts VIII, IX, and X are based on New South's failure to state a claim for which relief can be granted. (Doc. No. 10 p. 2; Doc. No. 42 p. 3.) The Appraiser Defendants' motions are replete with arguments that the Court should dismiss New South's tort claims because those claims are not cognizable causes of action under the economic loss rule. Thus, the substance of the Appraiser Defendants' motions plainly indicates that they are proceeding under Rule 12(b)(6). The Court refuses to elevate form over substance by denying the Appraiser Defendants' motions merely because they do not state which numbered paragraph serves as the basis for their motions, when the substance of their motions plainly identifies the 12(b) defense on which they rely.

Regarding the merits of the Appraiser Defendants' motions, the facts alleged in the Complaint indicate that a contract exists between Online Appraisals and New South. According to the Complaint, New South "contacted Online [Appraisals] to prepare an appraisal of the Property." (Doc. No. 9 § 14.) New South further concedes that Online Appraisals received a fee for preparing the Appraisal. (Doc. No. 18 p. 8.) Moreover, one of the certifications in the Appraisal, which is among the certifications forming the basis of New South's claims, states

that the appraiser "identified the lender/client in the appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report." (Doc. No. 9 Ex. B, Appraiser's Certification ¶ 20.) New South is the lender/client identified both on the front cover and on the signature page of the Appraisal. (*Id.* at ¶ 16, Ex. B.) In addition, the Appraisal states that New South is the intended user of the Appraisal and that the intended use of the Appraisal is for New South to evaluate the Property for a mortgage finance transaction. (*Id.*) Thus, the Court finds that New South contracted with Online Appraisals to prepare the Appraisal for purposes of closing the transaction on the Property.[6]

Florida's economic loss rule bars New South's tort claim against Online Appraisals for negligent selection (Count X) because the tort arises from the performance of the contract between New South and Online Appraisals. The substance of New South's tort claim is that Online Appraisals did not "exercise reasonable care, skill, and diligence in its selection of Ousnamer and Esposito" and it failed to "instruct and supervise Ousnamer and Esposito [adequately] in connection with the Appraisal." (*Id.* at ¶ 79.) New South argues that Online

---

[6] Accordingly, the Court rejects New South's argument that it merely "contacted Online [Appraisals] to prepare the Appraisal . . . but that there was never an agreement for them to do so." (Doc. No. 44 pp. 6-7.) New South argues that it did not contract for the Appraisal because its only remedy if Online Appraisals had not prepared the Appraisal would have been to solicit an appraisal from another source. (*Id.* at 7.) This argument is without merit. The allegations indicate that New South invited performance by Online Appraisals and Online Appraisals accepted the invitation when it prepared the Appraisal. Thus, the contract was formed when Online Appraisals accepted New South's offer by performing. If Online Appraisals did not perform, then New South would not have had a breach of contract remedy because no contract would have been formed–Online Appraisals would have rejected New South's offer. The unsoundness of New South's argument is revealed by its corollary. That is, if New South "contacted" Online Appraisals for an appraisal and Online Appraisals performed, but New South did not compensate it for preparing the appraisal, then, according to New South's logic, Online Appraisals would not have had a breach of contract action against New South. This argument is untenable and unsupported by the allegations.

Appraisals is liable for the actions of its independent contractors because it had a nondelegable duty to ensure that they performed their tasks in a non-negligent manner. (Doc. No. 44 p. 10.) However, the substance of the parties' contract called for Online Appraisals to prepare a reliable appraisal of the Property to assist New South in deciding whether to fund the transaction. Thus, to the extent Online Appraisals failed to exercise reasonable care, skill, and diligence in preparing the appraisal (or delegating its preparation), New South also has a breach contract action against Online Appriasals. Online Appraisals would have breached its contract when it did not ensure that its independent contractors prepared a reliable appraisal. Although New South may have both a tort and contract action against Online Appraisals, Florida's economic loss rule dictates that New South may only pursue its contract remedy because it has suffered purely economic damages. *See Ocean Ritz of Daytona Condo. v. GGV Assocs., Ltd.*, 710 So. 2d 702, 705 (Fla. 5th DCA 1998) ("[T]he premise of the rule is simply that a contract action is more appropriate for resolving economic losses than is a negligence action.").

New South also argues that the tort of "over stated valuation" is separate from the contract.[7] This argument is without merit. The Appraisal is replete with certifications as to the quality, reliability, and integrity of the methodology employed to estimate the market value of the Property. Indeed, the first sentence of the Appraisal states, "The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property." The Court finds that the tort of "over stated valuation" is not independent of the parties' contract, which obligated Online Appraisals

---

[7] New South does not indicate how the tort of "over stated valuation" relates to its cause of action for negligent selection.

to provide an accurate valuation of the Property. Thus, Florida's economic loss rule bars New South's tort claims against Online Appraisals. Accordingly, the Court dismisses Count X because it does not state a claim for which relief may be granted.

The existence of a contract between New South and Online Appraisals, however, is not dispositive of the Appraiser Defendants' argument that the economic loss rule bars New South's tort claims against Ousnamer and Esposito. New South alleges that Online Appraisals independently contracted Ousnamer and Esposito to prepare the Appraisal without New South's knowledge or consent. (Doc. No. 9 ¶ 15.) Conversely, in their motions, the Appraiser Defendants assert that Ousnamer and Esposito were employees of Online Appraisals, not independent contractors.[8] (Doc. No. 10 p. 3; Doc. No. 42 p. 8). The Appraiser Defendants assert, therefore, that because New South and Online Appraisals are in contractual privity, the economic loss rule bars New South's tort actions against employees of Online Appraisals. *See Vesta Const. and Design, L.L.C. v. Lotspeich & Assocs., Inc.*, 974 So. 2d 1176, 1181 (Fla. 5th DCA 2008) (holding that "when an aggrieved party is barred by the contractual privity economic loss rule from suing a corporation in tort, it cannot avoid the rule by suing non-professional employees for their alleged negligence in performing the contract on behalf of the corporation"). However, for purposes of ruling on the Appraiser Defendants' motions to dismiss, the Court must draw all inferences in favor of New South and accept as true New

---

[8] In the Appraisal, Esposito certifies that "[t]he appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm)." (*Id.* at Ex. B., Supervisory Appraiser's Certification ¶ 3.)

South's allegation that Esposito and Ousnamer were independent contractors, not employees, of Online Appraisals.

Even if the Court assumes that Online Appraisals independently contracted Ousnamer and Esposito to prepare the Appraisal, the Court cannot determine whether their status as independent contractors removes them from the purview of the economic loss rule. In their motions, the Appraisal Defendants do not address under what circumstances, if any, the economic loss rule could bar tort claims against non-employee independent contractors. Similarly, New South merely asserts that the economic loss rule is inapplicable because Ousnamer and Esposito were independent contractors, without citing any legal authority for this conclusion. For example, neither the Appraiser Defendants nor New South addresses whether, in the particular circumstances of this case, New South could bring a contract cause of action against Ousnamer and Esposito as a third party beneficiary of the independent contractor relationship between Online Appraisals and Ousnamer and Esposito.[9]

The allegations of the Complaint and the parties' arguments, therefore, are not sufficiently developed for the Court to make a reasoned determination concerning whether the

---

[9] New South argues that the economic loss rule does not bar its tort claims against the independent contractors because it was not in contractual privity with them. However, as noted elsewhere in this Order, Ousnamer and Esposito certify, among other things, that the Appraisal was prepared at the request of New South, its intended user was New South, and its intended use was for New South "to evaluate the property that is the subject of [the] appraisal for a mortgage finance transaction." (Doc. No. 9 Ex. B.) These certifications suggest that New South was the intended beneficiary of the alleged independent contractor relationship between Online Appraisals and Ousnamer and Esposito. Whether New South is an intended third party beneficiary is pertinent because courts have found under some circumstances that the economic loss rule bars tort claims for economic losses when a party could raise contract claims as an intended third party beneficiary. *See Ocean Ritz*, 710 So. 2d at 705.

economic loss rule bars tort claims against independent contractors under the circumstances presented by this case. Thus, the Court cannot dismiss Counts VIII and IX at this stage of the proceedings. The Court will revisit this question on summary judgment if a dispute remains regarding the status of Ousnamer and Esposito as employees or independent contractors, provided, of course, that the parties' respective positions can be maintained consistent with the obligations of Fed. R. Civ. P. 11.

Based on the foregoing, it is ORDERED as follows:

1. Defendant Anchor Title & Associates, Inc.'s Motion to Dismiss First Amended Complaint (Doc. No. 19), filed on August 26, 2008, is DENIED.

2. Defendants Robert Ousnamer's and Peter J. Esposito's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 10), filed on July 28, 2008, is DENIED.

3. Defendant Online Appraisals, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 42), filed on December 12, 2008, is GRANTED. Count X of Plaintiff New South's Amended Complaint is DISMISSED WITH PREJUDICE.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on March 3 , 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party

ANNE C. CONWAY
United States District Judge